IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JACQUELINE M. RUTHERFORD, *et al.*,  *
                                             *
                 Plaintiffs,  *
v.  *     Civil Case No. SAG-18-2475
                                             *
NATIONWIDE AFFINITY INS. CO.,  *
                                             *
                 Defendant.  *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiffs Jacqueline Rutherford, individually and as personal representative of the estate of Curtis Rutherford, Sr., Curtis Rutherford Jr., and Willadean Fischbach (collectively "Plaintiffs") brought this action against Defendant Nationwide Affinity Insurance Company ("Nationwide") seeking a declaratory judgment relating to Nationwide's liability under an uninsured motorist/underinsured motorist ("UM/UIM") policy. ECF 1. The parties have filed four dispositive motions: the Rutherford Plaintiffs have filed a Motion for Summary Judgment, ECF 27, to which Nationwide has filed a cross-Motion for Summary Judgment, ECF 37; and Plaintiff Fischbach has filed a separate Motion for Summary Judgment, ECF 26, to which Nationwide has also filed a cross-Motion for Summary Judgment, ECF 38. I have reviewed those filings, the associated oppositions and replies, and the surreply filed by the Rutherford Plaintiffs. ECF 39, 43, 49, 52. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons set forth below, Nationwide's cross-Motion as to the Rutherford Plaintiffs will be granted, Plaintiff Fischbach's motion and Nationwide's cross-Motion as to Fischbach will be granted in part and denied in part, and the Rutherford Plaintiffs' Motion will be denied.

I.      FACTUAL BACKGROUND

This case arises out of a tragic motor vehicle accident resulting in the death of Curtis D. Rutherford, Sr. ("the Decedent"). The facts underlying the accident are uncontested for purposes of this motion. On December 3, 2014, two Ford Mustangs engaged in an unlawful high-speed street race on Quarterfield Road in Anne Arundel County, Maryland. ECF 27-6, 27-7, 27-8. One of the Mustangs, driven by John Hayes, IV, lost control, crossed over the center line, and collided with a 1983 Oldsmobile Cutlass being driven by the Decedent. *Id.* The Decedent, who was the sole occupant of his vehicle, died of his injuries. *See, e.g.,* ECF 27-8 at 7.

The other Mustang, which was green in color, did not collide with the Decedent's vehicle during the race, and left the scene ("the phantom vehicle"). *See* ECF 1 at 4. Despite subsequent investigation, the identity of the driver of the phantom vehicle remains unknown. Plaintiffs' federal lawsuit against the sole identified driver, Hayes, is stayed pending resolution of this case.[1] *See Rutherford v. Hayes,* Civil No. ADC-17-0622.

On December 2, 2014, the day before the fatal accident, Jacqueline Rutherford ("Mrs. Rutherford"), the Decedent's wife, appeared in person, paid a premium, and signed documentation ("the binder documents") to establish automobile liability coverage with Nationwide ("the Rutherford policy"). ECF 27-12. The Rutherford policy includes UM/UIM coverage with per person limits of $100,000, and per occurrence limits of $300,000. ECF 27-9 at 2 (Answer 4). The

---

[1] Hayes has automobile insurance through Progressive Insurance ("the Hayes/Progressive policy"), with a coverage limit of just $50,000. ECF 27-9 at 2 (Answer 4). This Court need not determine how the proceeds of that policy will be considered in conjunction with the UM/UIM policy discussed herein, in the event of an eventual verdict in favor of Plaintiffs in their case against Hayes. This Court notes that Nationwide and Fischbach agree that the UM/UIM policy will provide "gap coverage" between its policy limits, as determined by this Court, and the amount tendered under the Hayes/Progressive policy. *See* ECF 26-1 at 10 (stating John Hayes IV had a policy with Progressive that provided $50,000 in liability coverage to Plaintiffs); ECF 38 at 6. The Rutherford Plaintiffs declined to dispute, or address, any appropriate offsets from the Hayes/Progressive policy. ECF 27-1 at 11 n.11.

named insureds on the Rutherford policy include Mrs. Rutherford, the Decedent, and Curtis Rutherford, Jr. (the Decedent's son). ECF 27-9 at 3 (Answer 7(a)); ECF 27-11 at 59. Willadean Fischbach (the Decedent's mother) is not a named insured under the Rutherford policy. *Id.* Mrs. Rutherford did not receive the formal written policy from Nationwide prior to the deadly accident on December 3, 2014. ECF 27-1 at 7–8.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT AND DECLARATORY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure states that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad,* 823 F. Supp. 2d 334, 348 (D. Md. 2011). If the moving party establishes that there is no evidence to support the non-movant's case, the burden then shifts to the non-movant to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-movant must provide enough admissible evidence to "carry the burden of proof at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of the non-movant's position is insufficient; rather, there must be evidence on which the jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Casey*, 823 F. Supp. 2d at 349. Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. The non-movant "must produce competent evidence on each element of his or her claim." *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999). If the non-movant fails to do so, "there can be no genuine issue as to any material fact," because

the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see also Casey*, 823 F. Supp. 2d at 348-49. In ruling on a motion for summary judgment, a court must view the facts and inferences "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

The parties to this action seek competing declaratory judgments. A federal district court can issue a declaratory judgment where the relief sought "(i) will serve a useful purpose in clarifying and settling the legal relations in issue; and (ii) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Continental Cas. Co. v. Fuscardo,* 35 F.3d 963, 966 (4th Cir. 1994) (citations omitted). Concrete insurance coverage disputes, such as those presented in the instant case, can be appropriate for such adjudication. *See id.*

## III. ANALYSIS

A brief summary of the parties' respective legal positions is useful at the outset. Nationwide concedes that it owes $100,000 in UM/UIM coverage, representing the total per person policy limit under the Rutherford policy, which Nationwide submits will be reduced by the $50,000 available from the Hayes/Progressive policy, for a total of $50,000 in new coverage. ECF 37 ¶ 4. In Nationwide's view, only the insured Plaintiffs should be entitled to share in the proceeds of the UM/UIM policy, so Fischbach's claim should be excluded. ECF 38 ¶ 2. The Rutherford Plaintiffs, on the other hand, assert that the total UM/UIM coverage could be as much as $800,000: $100,000 in coverage for each potential plaintiff (the Decedent's estate, Jacqueline Rutherford, Curtis Rutherford, Jr., and Fischbach) as to the underinsured Hayes vehicle; and another $100,000 in coverage for each of the four potential plaintiffs as to the uninsured phantom vehicle. ECF 27-1

at 22-23. Fischbach takes the position that she is entitled to bring a wrongful death claim and to recover against the UM/UIM policy pursuant to Md. Code Ann., Ins. Art., § 19-509(c)(2), and that the Plaintiffs collectively should be allowed to recover the $100,000 policy limit for the Hayes vehicle, and another $100,000 policy limit for the phantom vehicle, for a total of $200,000 before deduction of the $50,000 Hayes/Progressive policy. ECF 26-1 at 6, 11 ("Fischbach is entitled to underinsured motorist coverage for the negligence of Hayes and the disappearing driver."). For the reasons of contractual and statutory interpretation described below, this Court agrees with Nationwide as to the total available UM/UIM coverage, and agrees with Fischbach that Maryland law permits her to recover from the UM/UIM insurance proceeds.

### A. The Total UM/UIM Coverage Available Under the Policy is $100,000

#### 1. The Policy Terms Were In Effect At The Time of the Accident

The Rutherford Plaintiffs contend that only the binder documents executed by Mrs. Rutherford on December 2, 2014, and not the remainder of the policy terms, constituted the contract between the parties at the time of the accident. ECF 27-1 at 19-20. The parties agree that Mrs. Rutherford appeared in person on December 2, 2014, executed the binder documents at 1:55 P.M., and tendered payment in cash to pay the first premium. *See* ECF 27-1 at 7. The deadly accident occurred on December 3, 2014, before any formal written policy had been delivered to Mrs. Rutherford. The binder documents signed by Mrs. Rutherford, ECF 27-12, provide "UNINSURED MOTORIST—BODILY INJURY 100/300," and specifically state, "I hereby acknowledge that all coverages, required and optional, available to me have been fully explained . . . Any coverage that may be provided during the binder period is subject to all policy terms and conditions, including exclusions and endorsements that may apply." ECF 27-12 at 5.

The Rutherford Plaintiffs' contention that the binder documents constituted a separate contract not subject to the policy terms is unpersuasive, in light of the binder documents' plain language. Mrs. Rutherford acknowledged in writing that her coverage had been fully explained to her, and agreed that the coverage would be subject to all policy terms and conditions, including exclusions and endorsements. ECF 27-12 at 5. The fact that the formal written policy had not been delivered does not transform the binder documents into broader coverage than that agreed to by the parties, or entitle the Rutherford Plaintiffs to avail themselves of the benefits of the monetary policy limits, without being subject to the other coverage limitations that were material terms of the parties' agreement. The written binder documents executed by Mrs. Rutherford evidence the fact that the parties had in fact reached a meeting of the minds, and intended coverage to be provided to her during the binder period, subject to all policy terms.[2]

The Rutherford Plaintiffs' argument that the phrase "subject to" is ambiguous lacks merit in this context. The one case they cite as authority, *Wilde v. Swanson,* 314 Md. 80, 88-91 (1988), is inapposite. *See* ECF 52 at 2 n.2. *Wilde* considered the ambiguity of the phrase "subject to," but as used in a venue statute. The general statute was "subject to" two more specific parts of the statute, and a venue provision existed in both the general and specific sections. *See id.* at 91–92. In that context, there were multiple potential interpretations of the phrase, leading to differing results regarding alternative venues available to plaintiffs. *Id.* Here, in contrast, the plain language

---

[2] Neither party argues that coverage is unavailable because the parties had not yet reached a meeting of the minds as of December 2, 2014. However, such a position could be the logical extension of the argument that the Rutherford Plaintiffs propound. There is simply no support for the notion that the Rutherford Plaintiffs reached an agreement allowing unfettered recovery of the dollar amounts set forth in the binder documents, without implementing any of the remaining policy terms. If no meeting of the minds had occurred prior to delivery of the written policy, there would be no coverage, which is not a result either party urges in this case. *See Creel v. Lilly,* 354 Md. 77, 101 (1999) ("[T]o establish a contract the minds of the parties must be in agreement as to its terms.") (citations omitted); *Pavel v. A.S. Johnson,* 342 Md. 143, 162-63 (1996) (finding no contract formed where there was no meeting of the minds).

used in the binder documents is clear, and the Rutherford Plaintiffs do not proffer any plausible definition of "subject to all policy terms and conditions, including exclusions and endorsements that may apply" that might suggest that the binder documents could be considered to be a stand-alone contract, independent of the rest of the policy terms. Accordingly, the policy terms and conditions are appropriately considered in determining the scope of coverage during the binder period, when the fatal accident occurred.

### 2. The Available Coverage Is Not Affected By The Number of Plaintiffs

The Rutherford Plaintiffs, but not Fischbach, contend that the maximum insurance coverage available under the policy should be multiplied by the number of Plaintiffs. *See* ECF 27-1 at 11–12. In other words, in the Rutherford Plaintiffs' view, if claims can be sustained by the Decedent's estate, Mrs. Rutherford, and Curtis Rutherford, Jr., there should be three $100,000 policies available, and if Fischbach is determined to be a viable plaintiff, there should be four $100,000 policies available. *See id.* Nationwide counters that the policy limit, in total, is $100,000 for this accident, regardless of the number of Plaintiffs. ECF 37-1 at 6.

The Rutherford policy states, "The limit shown for Uninsured Motorists – Bodily Injury for any one person is for all covered damages, including all derivative claims, claimed by anyone arising out of and due to **bodily injury** to one person as a result of one occurrence. The per-person limit is the total amount available when one person sustains **bodily injury**, including death, as a result of one occurrence." ECF 27-10 at 39. The total amount available "for each occurrence" only applies "when two or more persons sustain **bodily injury**, including death, as a result of one occurrence," and is therefore inapplicable here, because the Decedent sustained the sole injury. *Id.*

Nothing about the policy language suggests that the $100,000 limit should be multiplied by the number of claimants. In fact, the language is clear that the per-person $100,000 limit

7

represents "the total amount available" as a result of one occurrence. "[W]ords are to be given their customary, normal meaning when insurance contracts are interpreted." *Howell v. Harleysville Mutual Ins. Co.,* 305 Md. 435, 443 (1986).

Contrary to the Rutherford Plaintiffs' contention, the operative statute, Md. Code Ann., Insurance Article, § 19-509, does not mandate a different result. That statute expressly requires a motor vehicle insurance policy to contain "coverage for damages, subject to the policy limits, that" the insured is entitled to recover for his bodily injuries, and a surviving relative of the insured is entitled to recover in a wrongful death claim, if the injury results from an accident with an uninsured motor vehicle. *Id.* Once again, the Rutherford Plaintiffs attempt to divorce the monetary limits of the Rutherford policy, or the $100,000 per person limit, from the terms of the policy clarifying that $100,000 is the total amount available to pay all claims from a single occurrence. The Rutherford Plaintiffs suggest that only the monetary "policy limits," and not any other "policy terms," can be considered in determining the amount of UM/UIM coverage required under § 19-509. Inherently, however, the "policy limits" cannot be ascertained without reference to the other policy terms. For example, the "policy limits" stated in the Rutherford policy are $100,000 per person and $300,000 per occurrence. The policy terms are essential to determine which of those two monetary limits would apply in a particular factual situation. Thus, "policy limits" must be determined by reference to the entirety of the policy, not just to dollar amounts viewed in isolation.[3]

The Rutherford Plaintiffs also argue that § 19-509's language requires the full limits of coverage for each Plaintiff. This Court disagrees. The statute reads:

> In addition to any other coverage required by this subtitle, each motor vehicle liability insurance policy issued, sold, or delivered in the State after July 1, 1975, shall contain coverage for damages, subject to the policy limits, that:

---

[3] Also, Plaintiffs' argument that only "policy limits," but not "policy terms," are applicable does not help their position in this context, since the policy limit, on its face, is $100,000, not "at least $600,000," as Plaintiffs contend. ECF 27-1 at 3.

8

(1) the insured is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in a motor vehicle accident arising out of the ownership, maintenance, or use of the uninsured motor vehicle; and

(2) a surviving relative of the insured, who is described in § 3-904 of the Courts Article, is entitled to recover from the owner or operator of an uninsured motor vehicle because the insured died as the result of a motor vehicle accident arising out of the ownership, maintenance, or use of the uninsured motor vehicle.

The process for interpreting statutory language, including that contained within the Insurance Article, is well-established in Maryland:

> The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature. Statutory construction begins with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology. In construing the plain language, a court may neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute; nor may it construe the statute with forced or subtle interpretations that limit or extend its application. Statutory text should be read so that no word, clause, sentence or phrase is rendered superfluous or nugatory . . . It is also clear that we avoid a construction of the statute that is unreasonable, illogical, or inconsistent with common sense.

*Stickley v. State Farm Fire & Cas. Co.,* 431 Md. 347, 358-59 (2013) (citations and quotations omitted). Using that process and reviewing the plain language of § 19-509, it requires "coverage for damages, subject to the policy limits" where there is a direct claim for bodily injury by an insured, and a wrongful death claim by a surviving relative of an insured. The statute does not require full policy limits coverage for each party with a potential claim, or provision of coverage that would, in total, exceed the policy limits.

The legislative intent supports the notion that the legislature sought to place plaintiffs in the same position they would find themselves in had the at-fault driver had liability coverage equal to their own. *See Woznicki v. Geico General Ins. Co.*, 443 Md. 93, 110 (2015) (quoting *Kritsings v. State Farm Mut. Auto. Ins. Co.*, 189 Md. App. 367, 375 (2009)) ("The effect [of the UM statute]

[i]s to provide an injured insured with compensation equal to that which would have been available had the tortfeasor carried liability insurance in an amount equal to the amount of the injured insured's UM coverage."); *see also Nickolson v. Nationwide Mut. Ins. Co.*, No. CIV. A. -99C-11-007, 2001 WL 985099, *6 (Del. Super. Ct. Aug. 22, 2001) (noting that § 19-509(c)(2) was passed in response to a court ruling in *Globe Amer. Cas. Co. v. Chung*, 76 Md. App. 524 (1988), holding that the prior version of § 19-509 did not require UM/UIM policies to provide coverage for wrongful death claims). Here, Plaintiffs attempt to leverage the statute to be placed in a superior position. But the legislative history does not suggest an intent to multiply policy limits to provide full insurance coverage for each potential plaintiff's wrongful death claim; rather, the statute provides standing for plaintiffs to assert wrongful death claims within the limits of UM/UIM policies. *See, e.g. Erie Ins. Exchange v. Heffernan*, 399 Md. 598, 612 (2007) ("The purpose of the uninsured motorist statute is <u>to provide minimum protection</u> for individuals injured by uninsured motorists.") (emphasis added). The statute provides a floor and a mechanism for some recovery in the wrongful death context, but does not provide a way to expand the scope of coverage beyond the insured's contractual limits.

The Rutherford Plaintiffs cite no cases interpreting § 19-509 in the way they suggest, and the sole out-of-district case they cite is unpersuasive. In *Wood v. Shepard*, 526 N.E.2d 1089 (Ohio 1988), the Supreme Court of Ohio interpreted that state's underinsured motorist statute to indicate that "each survivor has a separate claim and that all the separate claims may not be combined and limited to the single person limit of liability in the insured's underinsured motorist provision." *Id.* at 1091. First, the language of the Ohio statute differed from that in § 19-509. *Compare Wood*, 526 N.E.2d at 1091-92 *with* § 19-509. Second, Ohio superseded its underinsured motorist statute, in response to *Wood* and its progeny, to specify that liability insurance policy limits were not to be

10

multiplied in wrongful death or other automobile tort cases. *See Stewart v. State Auto. Mut. Ins. Co.*, 1999 WL 795680, at *4 (Ohio Ct. App. Oct. 7, 1999) (recounting the amendment of the Ohio statute to clarify that all claims pursuant to a UM/UIM policy from one person's injury constitute a single claim for coverage purposes).

Thus, evaluating the plain language of § 19-509, and considering the lack of any binding or persuasive authority suggesting a different outcome, this Court finds no basis to permit multiplication of the policy limits by the number of plaintiffs or claims.

### 3. The Available Coverage Is Not Affected By The Number of Tortfeasors

The Rutherford Plaintiffs and Fischbach contend that there are two tortfeasors in this case, Hayes and the driver of the phantom vehicle, and thus that there should be $100,000 coverage for each "occurrence," which they define as a cause of the injury to the Decedent. *See, e.g.*, ECF 27-1 at 14–19. This Court agrees with Nationwide that, although there are two tortfeasors, there is a single occurrence and a single cause of the injury to the Decedent, and coverage is therefore limited to the total amount available for a single occurrence, regardless of the number of negligent parties.

The term "occurrence" is not defined in the policy. Thus, this Court must determine whether the absence of a definition renders the policy ambiguous. *See Aetna Casualty & Surety Co. v. Brethren Mut. Ins. Co.*, 38 Md. App. 197, 205 (1977) (failing to define "farming" in a policy created ambiguity). To ascertain the meaning of a term in an insurance policy, the Court considers "not what the insurer intended its words to mean, but what a reasonably prudent person applying for insurance would have understood them to mean. The criterion is ambiguity "from the standpoint of a layman, not from that of a lawyer." *Id.*; *see also C&H Plumbing and Heating, Inc. v. Employers Mutual Casualty Co.*, 264 Md. 510, 515 (1972) (citations omitted). The Maryland Court of Appeals has determined, in a prior case, that "occurrence" is ambiguous in the insurance

context, because dictionaries contain different definitions of the term. *St. Paul Fire & Marine Ins. Co. v. Pryseski*, 292 Md. 187, 196–98 (1981). This Court agrees that "occurrence" is ambiguous since it is not defined in the policy. Where language is ambiguous, the Court can look to extrinsic evidence to determine the parties' intent.[4] *Connors v. Govt. Employees Ins. Co.*, 442 Md. 466, 480-81 (2015) (explaining that courts interpret the language of an insurance policy with the same principles and rules of construction that are used to interpret other contracts). Here, looking to extrinsic evidence to resolve the ambiguity, a prominent insurance treatise states, "An occurrence is any event that gives rise to liability for the assured under the insurance contract. The occurrence includes all of the logically related actions and events that result from the initial occurrence, as well as the damages that result." Bouvier, John, and Francis Rawle, BOUVIER'S LAW DICTIONARY AND CONCISE ENCYCLOPEDIA. BUFFALO, N.Y.: W.S. HEIN (1984).

The Rutherford Plaintiffs and Fischbach argue that there were two occurrences in this case: (1) the phantom vehicle's decision to race Hayes; and (2) Hayes striking the Decedent's vehicle. *See* ECF 27-1 at 14 (separating the "speed contest" between the green Mustang and Mr. Hayes' vehicle from Mr. Hayes losing control of his vehicle). Assuming the facts as alleged in Plaintiffs' complaint for the purposes of this motion, this Court agrees that the driver of the phantom vehicle, if identified, would be liable for his/her negligence in causing the accident, but disagrees that the involvement of the phantom vehicle constitutes a separate occurrence causing injury to the Decedent. This case involves a single accident and a single injury to the Decedent, proximately caused by the race and the resulting impact between Hayes's Mustang and the Decedent's car. The

---

[4] Under Maryland law, a court only construes a policy against the insurer, as the drafter, where the court cannot ascertain the intent of the parties after examination of extrinsic evidence. *Connors*, 442 Md. at 483.

phantom vehicle's action participating in the race contributed to the injury the Decedent sustained in that occurrence, but did not cause a separate occurrence.

Plaintiffs cite *CSX Transp., Inc. v. Continental Ins. Co.,* 343 Md. 216, 221 (1996), for the proposition that the "cause" test is used to determine the number of occurrences. ECF 27-1 at 14. That case involved present and former railroad employees who sued the railroad, alleging that they suffered noise-induced hearing loss in the course of their employment. *Id.* at 221-22. CSX had a self-insured retention limit for each occurrence, and accordingly argued that all claims resulted from two common causes: the policyholder railroads' failure to provide their employees with any hearing protection and the failure to mandate system-wide hearing protection. *See id.* at 221. Since all claims resulted from these two common causes, CSX contended that the claims filed constituted a single occurrence, *i.e.*, exposure to hazardous noise levels. *Id.* at 221. The insurance company argued that individual incidents, involving thousands of employees over many years, gave rise to the employees' hearing loss, and constituted individual occurrences. *Id.* At trial, the jury found a minimum of 20,235 separate occurrences in the case, *id.* at 229, and the railroad appealed. The Court determined that an occurrence is an event that "results in personal injury or property damage or such injury or damage arises out of an occurrence." *Id.* at 235 (indicating that the parties also agreed to the "causes of injury" standard). In dicta, the Court suggested that "common cause" is not synonymous with "proximate cause," and upheld the jury's verdict that there had been multiple occurrences leading to the employees' injuries. *Id.* at 248.

Here, applying the "causes of injury" standard propounded by Plaintiffs, there is a single insured Decedent who sustained injuries from the impact of a single automobile in the course of an ongoing race. There were two drivers who were involved in the cause of death (specifically the street race), and who could have been sued for negligence had the phantom driver been identified,

13

but that does not signify that the actions of the two cars constituted two separate occurrences for the purposes of interpreting the insurance policy. Plaintiffs erroneously conflate the number of potential tortfeasors involved in an accident with the number of causes of death or bodily injury. Taken to its logical extension, if the street race had involved a dozen uninsured or underinsured cars, and only one car made contact with the Decedent's, under Plaintiffs' contention they would be entitled to recover twelve times the policy limits for the single accident. A definition of "occurrence" incorporating the number of tortfeasors contravenes the notion that one occurrence is one event, along with its "logically related actions and events." *See* Bouvier's Law Dictionary; *see also Johnson v. Nationwide Mut. Ins. Co.*, 388 Md. 82, 89 (2005) ("We will avoid constructions that are illogical, unreasonable, or inconsistent with common sense.").

The Rutherford Plaintiffs cite another Ohio case, *Sarrough v. Budzar*, 38 N.E.3d 921, 932 (Ohio Ct. App. 2015) for the proposition that the "proximate cause" standard should apply to determine the meaning of "occurrence." In *Sarrough*, on an icy day, one driver (Meadows) lost control of her car and spun out, causing a multi-car accident. *Id.* at 923. Meadows was hit from behind by one vehicle and, once on the other side of the highway, a second vehicle struck her. *Id* The decedent swerved her car to avoid that accident, and also lost control on the ice, spinning out of control and coming to a stop sideways on the roadway. *Id.* Then, moments later, a separate driver (Budzar) crashed into the decedent's car, resulting in her death. *Id.* at 924. Looking at those facts, the Ohio court decided that "if we were to apply the causation approach to the facts here, we would find that there is more than one alleged cause of [the decedent's] fatal injuries and thus, more than one potential 'accident' for liability limits purposes. Here the alleged causes of [the decedent's] injuries were separate acts of negligent conduct by Meadows and Budzar." *Id.* at 933. Accordingly, the *Sarrough* court upheld the trial court's determination that the policy provided the

14

full limits of UM/UIM coverage for each of the two accidents in the case, or a total of twice the policy limits in coverage. *Id.* at 944. The reasoning in *Sarrough* illustrates why only the policy limits, without multiplication, provide the correct amount of coverage in this case. In the instant case, there is only one act of negligent conduct by two drivers (the race), only one potential "accident" for liability limits purposes, and only one alleged proximate cause of the Decedent's injury, *i.e.*, the impact with Hayes's Mustang. Although more than one driver might be legally responsible for that single cause, it was one accident and one occurrence.

Finally, Plaintiffs cite to a case permitting recovery against phantom drivers, even without any contact between the phantom vehicle and a plaintiff's vehicle. *See, e.g. State Farm v. MAIF,* 277 Md. 602, 605 (1976) (finding that Maryland's UM/UIM statute requires coverage in a non-impact accident caused by a phantom driver). That case is inapposite. Where the phantom driver is the proximate cause of an injury to a plaintiff, the plaintiff can recover under a UM/UIM policy. *See id.* at 605 ("State Farm's limitation of coverage to instances of physical impact between the insured and the phantom vehicle plainly violates the legislative mandate of § 541(c)"). *State Farm* does not suggest, though, that in a case involving a race between a phantom and a known driver, where only the known driver collides with the injured party, the actions of the phantom driver constitute a separate occurrence. Indeed, the plaintiff in *State Farm* did not identify multiple tortfeasors, and the court did not address policy "occurrences" in any form. Similarly, the decision in *Kres v. Md. Auto. Ins. Fund,* 273 Md. 289 (1974), does not support Plaintiffs' contention. *Kres* establishes that in the context of a street race, a plaintiff can recover under a UM/UIM policy for the actions of a negligent phantom driver. *Id.* In other words, that racing driver is a tortfeasor. *Kres* does not support the position that plaintiffs are entitled to treat the actions of the phantom

15

driver and those of the known driver, participating in a single street race, as separate occurrences under the UM/UIM policy.

Ultimately, Plaintiffs have not provided a legal authority or viable definition of "occurrence" to warrant deviation from the definition in Bouvier's Law Dictionary.

### B. Fischbach Can Recover Against the UM/UIM Policy Proceeds

The Decedent's mother, Fischbach, is an appropriate plaintiff in a wrongful death action in Maryland, seeking compensation for the death of her child. *See* Md. Code Ann., Cts. & Jud. Proc., § 3-904(a)(1). Md. Ann. Code, Ins., § 19-509, gives wrongful death plaintiffs standing to recover against UM/UIM policies. Specifically, § 19-509 requires motor vehicle liability insurance policies to contain coverage that "a surviving relative of the insured, who is described in § 3-904 of the Courts Article, is entitled to recover from the owner or operator of an uninsured motor vehicle because the insured died as the result of a motor vehicle accident arising out of the ownership, maintenance, or use of the uninsured motor vehicle." *Id.* § 19-509(c)(2). That provision thus permits recovery under a UM/UIM policy for relatives who would be entitled to bring a wrongful death action under Maryland law, including "the wife, husband, parent, and child of the deceased person." Md. Code Ann., Cts. & Jud. Proc., § 3-904(a)(1). All parties agree that Fischbach is not a named insured under the Nationwide policy. However, by statute, she can avail herself of the Decedent's UM/UIM coverage as his parent.

The case Nationwide cites as a "similar situation" justifying denial of Fischbach's claim is in fact readily distinguishable.[5] ECF 49 at 16. In *Johnson v. Nationwide Mutual Insurance*

---

[5] Nationwide also states, in a cursory fashion, that "Fischbach's presence in the Rutherford household was neither continuous nor significant." ECF 49 at 16. In the case Nationwide cites, *Mundey v. Erie Ins. Group*, 396 Md. 656 (2007), the plaintiff was seriously injured in a car accident, and attempted to obtain coverage for his injuries under his parents' policy. *Id.* at 659. However, the Court concluded that he was not an "insured" within the meaning of § 19-509(c)(1) since he did not reside with his parents at the time of the accident. *Id.* at 672–73. Here, by contrast, there is no dispute that Fischbach is a "surviving relative of the insured" within the language of § 19-509(c)(2).

16

*Company,* 388 Md. 82 (2005), a minor sought to recover uninsured motorist benefits, under his mother's insurance policy, for the death of his father in an automobile accident. The minor's father was not a named insured under the policy, was not married to the insured, and did not live with the insured. *Id.* at 86. Thus, the question before the Court was "whether § 19–509 of the Insurance Article requires an insurer to provide uninsured motorist coverage for the wrongful death of a person who was not an insured under the policy." *Id.* at 86. The Court concluded that an insurer had no such duty. *Id.* Here, by contrast, UM/UIM coverage is provided for the wrongful death of the Decedent as a named insured under the Rutherford policy, and *Johnson* is therefore inapposite. The Decedent's surviving relatives, as defined in § 3-904 of the Courts Article to include his mother, can recover his UM/UIM benefits following his wrongful death. The amount each Plaintiff can recover from any judgment will be determined by the jury. *See* Md. Code Ann., Cts. & Jud. Proc. § 3-904(c)(2) ("[T]he amount recovered shall be divided among the beneficiaries in shares directed by the verdict.") (citing Md. Code Ann., Cts. & Jud. Proc., § 11-108(d)(2)).

## **CONCLUSION**

For the reasons set forth above, Nationwide's cross-Motion for summary judgment as to the Rutherford Plaintiffs, ECF 37, will be granted, Plaintiff Fischbach's Motion, ECF 26, and Nationwide's cross-Motion as to Fischbach, ECF 38, will be granted in part and denied in part, and the Rutherford Plaintiffs' Motion, ECF 27, will be denied. The Court will issue a declaratory judgment that the Plaintiffs are limited to total coverage in the amount of $100,000, for all Plaintiffs, under the UM/UIM policy, before any applicable offsets for amounts recovered under the Hayes/Progressive policy, and that Plaintiff Fischbach is entitled to coverage under the UM/UIM policy, as specified in § 19-509. A separate Order follows.

Dated: December 5, 2019    /s/
Stephanie A. Gallagher
United States District Judge